## JACOB H. SLEMAKER *vs.* BUSHROD W. MARRIOTT.
### *December*, 1833.

The sheriff is responsible for the escape of a party arrested in a civil action, or committed for want of bail, though the public jail in which such party is confined is out of repair;—he is bound by public policy for the safe keeping of those whom the law entrusts to his care.

The act of 1818, ch. 208, has so far recognized the practice of committing slaves to jail, by justices of the peace, at the request of their owners, for real or supposed offences against them, to be there supported at the expense of such owners, that such a commitment, not made at the instance of a party engaged in the traffic of buying and selling slaves, is to be regarded as made in due course of law, for which the sheriff is responsible accordingly.

The sheriff who receives the public jail from his predecessor without a deed of assignment, is responsible from that period, for the safe keeping of the prisoners there, as if they had been originally committed to his custody.

APPEAL from *Anne Arundel County Court.*

This was an action on the *case*, instituted by the appellant on the 18th April, 1831, against the appellee, the sheriff of *Anne Arundel* county, to recover damages for the escape of a negro man, the slave of the plaintiff, who had been committed to the defendant's custody for safe keeping. Issue was joined upon the plea of not guilty. At the trial the plaintiff proved, that on the 26th of October, 1830, he was the owner of the negro slave, in the declaration mentioned; that he was worth $375; that he ran away, was apprehended, and confined in *Harford* county jail. That by the authority of the plaintiff, the witness went to *Harford* and received the slave, brought him to *Annapolis*, and carried him before a justice of the peace for *Anne Arundel* county, on the 26th of October 1830, who then and there committed him to the custody of the sheriff of said county. That the witness delivered him on the same day with the following commitment to the jailer, in the jail.

"The sheriff of *Anne Arundel* county will receive into his custody, the body of negro *Bill Philips*, the property

of *Jacob H. Slemaker*, and him safe keep, until released by his said master. Given under my hand and seal, this 26th October, 1830. *James Hunter.* (seal.)"

He further proved, that a certain *Richard Iglehart* was then in possession of said jail, by virtue of his office as sheriff, which expired on the first Monday of the said month of October. That the defendant was duly elected, and commissioned as sheriff, and bonded as such on the 27th of the same month, which bond was approved on the 2nd, and recorded on the 8th of the then following November. That on some day between the 4th and 9th of the said month of November, the witness, who was duly authorised for that purpose, by the late sheriff *Richard Iglehart*, attended in the sheriff's office, and offered to surrender the office, and jail to the defendant, who upon being informed that a formal assignment was not necessary, or usual, consented to receive the custody of the said jail, promised to continue the late jailer, as his jailer, and went towards the jail for that purpose. That the negro slave in question, was then confined in the said jail, and escaped a few days afterwards.

The defendant then offered to prove by a witness who was present at the conversation between the agent of the late sheriff and the defendant, that the defendant declined receiving the jail without a written transfer of the prisoners. The defendant then asked the witness what was the condition of the jail at the time of the confinement, and escape of the said negro, but the plaintiff objected to the question, upon the ground that the jail's being out of repair did not exonerate the defendant from his responsibility to the plaintiff in this action; but the court (DORSEY, Ch. J., and KILGOUR, and WILKINSON, A. J.) overruled the objection, and directed the witness to answer the question, being of opinion, that the commitment in this case, was not of such a character as to bind the sheriff for all possible escapes, save those arising from the act of *God* or the king's enemies.

The plaintiff excepted, and the verdict and judgment being against him, he prosecuted the present appeal.

The cause was argued before BUCHANAN, Ch. J., STE-PHEN, and ARCHER, J.

*Brewer* for the appellant contended,

1. A sheriff is answerable for the escape of a prisoner legally committed to his custody, in every event, unless it be occasioned by the act of *God*, or of the enemies of the State, and is not excused, though the escape is in consequence of the jail being out of repair. *Jones Bail.* 121. *(note* 38.*)* *White vs. Wagner*, 4 *H. and J.* 391.

2. The negro for whose escape this suit was instituted, was legally in the custody of the sheriff, as sheriff by virtue of the commitment set forth in the bill of exceptions. 2 *Bac. Abr.* 508. *Act* 1715, *ch.* 44; 1792, *ch.* 72; 1818, *ch.* 208. *Somervell vs. Hunt*, 3 *Harr. and McHen.* 113.

3. The assignment as proven in the bill of exceptions, was sufficient to vest the custody of all the prisoners in the defendant, if any assignment was necessary, which however is denied. 6 *Bac. Abr.* 161.

*Alexander* for the appellee.

1. If the opinion of the county court is right, then the judgment must be affirmed, although this court should not concur in the reason given for it. *Sothoron vs. Weems*, 3 *Gill and Johns.* 441. The evidence offered was admissible in bar of the action, as its tendency was to show, that the defendant had been guilty of no neglect, which is the gist of the complaint. 2 *Stark. Ev.* 360. 1 *Wheat. Selw.* 455.

2. The act of 1818, gives the master the privilege of committing his slaves to jail, to be there supported at his expense, but it does not require the sheriff as such, to receive and keep them. If the sheriff thinks proper to receive, the law protects him from any penalty for so doing; but there is nothing in it, which requires it of him as a

matter of official duty, or allows him any compensation for so doing.

3. If however the slave was legally in the custody of the sheriff, still, he is only liable in the present action to such damages as the jury may consider reasonable under all the circumstances. 2 *Johns Rep.* 453. *Bonafous vs. Walker,* 2 *Term. Rep.* 126. 1 *Saund.* 37. And it follows therefore, that although evidence in regard to the condition of the jail might not be admissible in bar of the action, it would be in mitigation of damages. 2 *Stark. Ev.* 877.

BUCHANAN, Ch. J., delivered the opinion of the court.

The appellant being the owner of a negro slave who had absconded from his service, on his being brought back, caused him to be committed by a justice of the peace to the jail of *Anne Arundel* county, who was received by the then sheriff into his custody, and confined in jail; and on the expiration of his term of service as sheriff, the defendant who succeeded him, on entering upon the duties of his office, accepted and took possession of the jail, together with the negro slave then confined in it, but who in a few days afterwards made his escape, and became wholly lost to the appellant; and this suit was brought against the defendant as sheriff, to recover damages for the escape.

At the trial the plaintiff gave evidence of the value only of the negro, as the measure of the damages sought to be recovered. And the defendant offered to give evidence of the condition of the jail at the time of the confinement and escape of the negro; which was objected to on the part of the appellant, on the ground that the jail being out of repair did not exonerate the defendant from his responsibility in damages on account of the escape; but the court overruled the objection, and suffered the evidence so offered to go to the jury. To which an exception was taken, and the question presented is, whether a sheriff is liable in damages for an escape, in any such case of commitment to jail

by a justice of peace of a negro slave at the instance of his owner, as in the ordinary case of an escape? The evidence was not offered in mitigation of damages, but in bar of the action, and objected to on that ground, and admitted for that purpose. It was the only purpose for which it could have been used. The defendant was liable or not for the escape. If answerable at all, and not exempted from responsibility by the jail being out of repair, (if such was the fact,) his liability was co-extensive with the loss, the injury sustained by reason of the escape, and could not be affected by any condition of the jail, (with which the appellant had nothing to do,) that did not exonerate the defendant. It is not like the case of an action for damages, in which the conduct of the plaintiff, the provocation received by the defendant, &c. may be given in mitigation, as in an action for a libel, or of assault and battery. And whether the evidence offered, and objected to, was admissible or not, in bar of the action, depends upon the character, and extent of the duties, and responsibility of sheriff, in relation to commitments to their custody, and safe keeping, by justices of the peace of negro slaves, at the instance of their owners. If the owner of a negro slave has the right to have such negro slave committed to jail, the sheriff, as such, is bound to receive and safe keep him; and is equally liable for an escape, as in the case of a man whom he has arrested in a civil action, or who may be committed for want of bail. And it is not denied, that in such a case the sheriff would be liable for an escape, notwithstanding the public jail should happen to be out of repair. That is his own look out; he takes upon himself the office with its responsibilities, and is bound for the safe keeping of those whom the law intrusts to his custody. Public policy requires it, and in an action against him for an escape, it is not a sufficient answer to say that the jail was out of order. The only inquiry therefore is, whether the appellant had a right to have the negro man in question committed to the jail of *Anne Arundel* county; no objection being raised to

the sufficiency of the warrant of commitment, in form, or substance.

It has been the constant practice (with what moral propriety, it is not for us to say,) for owners of slaves in this State, to have them committed to the jails of the respective counties, for real or supposed offences committed against their owners. But a great abuse of the public jails having grown up, in making them the receptacles of slaves for persons engaged in the traffic of buying and selling them, the act of 1818, *ch.* 208, was passed to correct that abuse. By the first section of which it is declared to be unlawful for the sheriff of any county, to receive into the public jail any negro slave unless committed in due course of law. The second section imposes a fine of $500, upon any sheriff who shall receive into the public jail any slave unless he shall be so committed. And by the third section it is enacted, "that nothing in this act contained, shall be construed to prohibit or prevent the owner of a slave, who is a person not engaged in the traffic of buying and selling slaves, from having any slave committed to jail, and supported at his expense." Thus, by prohibiting sheriffs from receiving into the public jails, negro slaves belonging to persons engaged in the traffic of buying and selling slaves, unless committed in due course of law; and treating commitments of negro slaves for safe keeping, at the instance of such persons as not made in due course of law; and by declaring, that nothing in that act shall be construed to prohibit or prevent the owner of a slave, who is not a person engaged in the traffic of buying and selling slaves, "from having any slave committed to jail," by irresistible implication, (construing all the sections together,) legalizing such commitments, and giving to them the character and effect of, and recognizing them as *commitments in due course of law.* The words "having any slave committed to jail," meaning (in the sense in which they are used in the act,) *committed by a proper officer of the law.* What other construction can be given to that act? No negro slaves are to be received

into the public jails, *unless committed in due course of law,* but slaves committed at the instance of owners not being persons engaged in the traffic of buying and selling slaves, are to be received into the public jails. Such commitments therefore, are authorized by that act, and are *commitments in due course of law.* It is a right recognized, and extended by the act to the designated owners of slaves, to have them committed to jail by the proper officer, and the sheriffs are bound to receive such slaves so committed, to be supported under the provisions of the last section of the act, at the costs of their owners.

In this case, the defendant having entered upon the duties of his office, accepted, and received the jail from his predecessor, together with the negro in question then confined in it, he took him with the jail, and is in no better condition, than if he had been originally committed to his custody ; and is amenable to the appellant in damages to the amount of the loss sustained, in consequence of the escape of the negro.

In this view of the subject, we think the court below erred in permitting the evidence objected to, to go to the jury.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.